**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DOMINICK BRANDON, on behalf of himself
and others similarly situated,

                                      Plaintiff,

v.

A.D.A. TRAFFIC CONTROL LTD. and
AVANGRID NETWORKS, INC. doing business
as New York State Electric & Gas Corporation,

                                     Defendants.

5:25-cv-1668
(ECC/ML)

---

Innessa M. Huot, Esq., *for Plaintiff*
David M. Pocius, Esq., *for Defendant A.D.A. Traffic Control Ltd.*
William J. Anthony, Esq., *for Defendant NYSEG*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Dominick Brandon brings this putative class action against Defendants A.D.A. Traffic Control Ltd. (ADA) and New York State Electric & Gas Corporation (NYSEG),[1] alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq. and the New York Labor Law, and related common-law claims. Dkt. No. 1. Presently before the Court are NYSEG's motion to dismiss the Complaint and ADA's partial motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. Nos. 17, 19. The motions are fully

---

[1] NYSEG states that it was incorrectly sued under the name "Avangrid Networks, Inc. d/b/a New York State Electric & Gas Corporation." Dkt. No. 17. The Clerk of the Court is respectfully directed to amend the case caption to reflect that "New York State Electric & Gas Corporation" is the proper name of the Defendant.

briefed. Dkt. Nos. 26, 27, 28.[2] For the following reasons, each Defendant's motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    The Complaint[3]

ADA is a company that "specializes in providing traffic control services to NYSEG" throughout upstate New York. Dkt. No. 1 ¶ 1.[4] ADA "entered into an agreement with NYSEG, pursuant to which ADA provides NYSEG with Flaggers on NYSEG jobsites located on public roadways." *Id.* at ¶ 32. Plaintiff further alleges, upon information and belief, that the work Flaggers perform is "pursuant to agreements ADA ha[s] with NYSEG and/or contracts between NYSEG and the State of New York and/or other municipalities" and/or "permits issued by the New York State Department of Transportation" (NYSDOT). *Id.* at ¶¶ 34, 35. Plaintiff alleges that all of these contracts, agreements, and/or permits require that "any of their direct or indirect subcontractors . . . pay prevailing wages." *Id.* at ¶ 36.

Flaggers' job duties include "redirecting traffic away from and cordoning off access to jobsites operated by NYSEG." *Id.* at ¶ 38. Defendants "typically schedule Flaggers to work Monday through Friday, from 6:30 a.m. to 3:30 p.m., for a total of at least 45 hours per week." *Id.* at ¶ 48. Each morning, Defendants "direct Flaggers to report to one of NYSEG's facilities" at 6:30

---

[2] On June 26, 2026, Plaintiff filed a letter requesting leave to provide supplemental briefing regarding *Walton v. Comfort Systems USA (Syracuse), Inc.*, 2026 N.Y. Slip Op. 03911, 2026 WL 1790858 (N.Y. June 23, 2026). Dkt. No. 31. Plaintiff's request is denied because the Court considers *Walton*, 2026 WL 1790858, in this Memorandum-Decision and Order.

[3] These facts are drawn from the Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] NYSEG is a regulated utility which "provid[es] electric and gas services across Upstate New York and New England." Dkt. No. 17-2 ¶ 4.

a.m. to "receive the location of their first assigned jobsite and to pick up equipment," including traffic cones and signs. *Id.* at ¶ 50. "On occasion, ADA and/or NYSEG also issue Flaggers a company vehicle to drive to NYSEG jobsites throughout the day," in which case Flaggers are required to perform a "pre-post inspection" of the vehicle. *Id.* at ¶¶ 51-52. Flaggers are thereafter directed to wait in their vehicles until 7:00 a.m., when they travel to the first assigned jobsite. *Id.* at ¶ 53. Defendants "instruct Flaggers to input 7:00 a.m. at the time their shift starts" even though they are required to arrive and begin working at 6:30 a.m. *Id.* at ¶ 54.

If NYSEG completes work at a jobsite early, a NYSEG supervisor "will direct Flaggers to a second job site—and a third or fourth jobsite—so they can continue working until their shift is complete." *Id.* at ¶ 58. Flaggers' shifts "only conclude when one of Defendants' supervisors informs them that their shift is completed." *Id.* at ¶ 56. Flaggers are instructed to input 3:00 p.m. as the time their shift ends even though "Flaggers routinely work or are driving an ADA and/or NYSEG company vehicles until at least 3:30 p.m." *Id.* at ¶ 59.

ADA and NYSEG "utilize a proprietary smartphone application (the 'Smartphone App') developed . . . to allow Flaggers to check for available shifts." *Id.* at ¶ 60. NYSEG "directly posts, or instructs ADA to post, available shifts to the Smartphone App." *Id.* at ¶ 61. Flaggers also input the number of hours worked at the end of each shift, excluding the alleged pre- and post-shift off-the-clock work. *Id.* at ¶ 64. Defendants use the Smartphone App to confirm the number of hours Flaggers worked "to process their payroll and/or to rectify any discrepancies." *Id.* at ¶ 79.

The Complaint alleges that both ADA and NYSEG maintain "direction, control, and supervision of the work of Flaggers they employ." *Id.* at ¶ 65. For example, Flaggers report to a NYSEG supervisor who assigns them to a jobsite. *Id.* at ¶ 67. "[O]ne of Defendants' supervisors directs Flaggers' work" while on the jobsite, including "where to stand to direct traffic, where to

erect signage, which streets to close, and when to notify their crew of incoming traffic." *Id.* at ¶ 69. Flaggers must obtain permission from "NYSEG supervisors to take breaks during their shifts," including to use the restroom or each lunch. *Id.* at ¶¶ 71-75.

Plaintiff alleges that both Defendants "have the power to hire, fire, and discipline Flaggers for breaching their internal policies and standards." *Id.* at ¶ 80. ADA interviews and hires Flaggers and requires them to fill out an application. *Id.* at ¶¶ 81-82. When a Flagger is hired, ADA instructs the Flagger to fill out paperwork with personal information, including bank account information; makes photocopies of the Flagger's license and social security card; and directs the Flagger to purchase clothing and other equipment from ADA, "the costs of which are deducted from Flaggers' wages." *Id.* at ¶ 84. Defendants also "jointly require every Flagger to take a flagging training course, and pass a written and practical examination" prior to hire. *Id.* at ¶ 100.

Plaintiff alleges that Defendants "jointly establish hourly rates" of $18.00 per hour and $27 per hour of overtime work for Flaggers. *Id.* at ¶¶ 88-89. Once Defendants determine the number of hours Flaggers worked using the Smartphone App, NYSEG pays ADA "an hourly rate for these hours, pursuant to unit prices set in agreements between ADA and NYSEG," and ADA then pays the Flaggers. *Id.* at ¶¶ 90-93.

Plaintiff was hired by ADA in November 2024 and has worked as a Flagger since then. *Id.* at ¶¶ 177-78. The allegations about Plaintiff specifically track those made about Flaggers generally. *See id.* at ¶¶ 177-226; *see also id.* at ¶ 37 (asserting that all allegations "regarding Plaintiff's and Flaggers' work, pay, and the control exerted over them by Defendants[] apply equally to both Plaintiff and Flaggers who Plaintiff seeks to represent").

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City*

4

*Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id*. (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    DISCUSSION

The Complaint asserts, on behalf of Plaintiff, a putative class, and a putative FLSA collective: (1) two claims under the FLSA for failure to pay overtime and minimum wage (first and second causes of action); (2) seven claims under the NYLL (third through ninth causes of action); (3) a claim for breach of contract (tenth cause of action); and (4) a claim for unjust enrichment (eleventh cause of action). Dkt. No. 1 ¶¶ 259-357. NYSEG moves to dismiss the Complaint in its entirety. Dkt. No. 17. ADA moves to dismiss counts six, seven, ten, and eleven. Dkt. No. 19.

#### A.    Claims Related to Prevailing Wages

Plaintiff asserts a cause of action for breach of contract arising out of Defendants' alleged failure to pay him prevailing wages, and a related cause of action for unjust enrichment. Dkt. No. 1 ¶¶ 337-57. NYSEG and ADA both move to dismiss these claims.

##### 1.    The MSA

As an initial matter, the Court must determine whether it may consider the "Master Services Procurement Agreement" between ADA and Avangrid Service Company dated August 13, 2024 (the MSA) which NYSEG submitted in support of its motion to dismiss. Dkt. No. 17-3. According

5

to the MSA recitals, Avangrid Service Company is "authorized to assist" NYSEG in "procuring certain services," including traffic control, and selected ADA as a "vendor-of-choice" for those services, "which shall be procured and awarded in accordance with [the MSA]." *Id.* at 2.[5]

NYSEG argues that the Court may consider the MSA because "it is repeatedly referred to within Plaintiff's Complaint and relied upon by Plaintiff" in bringing his breach of contract claim. Dkt. No. 17-1 at 9 n.3. Plaintiff disputes that the MSA is incorporated by reference in the Complaint, because he "lacked possession of the MSA" when drafting the pleading and only generally referred to contracts between NYSEG and ADA. Dkt. No. 26 at 11 n.3. All parties make arguments based on the terms of the MSA, although Plaintiff notes that he "seeks relief pursuant to all relevant NYSEG contracts," not just the MSA. *Id.* at 34 n.7.

The Court concludes that the MSA is neither incorporated by reference in nor integral to the Complaint and therefore declines to consider it on Defendants' motions to dismiss. First, the Complaint's allegations about "agreements and/or contracts" entered into by ADA and NYSEG, *e.g.*, Dkt. No. 1 ¶ 142, are not a "clear, definite and substantial reference" to the MSA such that the document is incorporated by reference. *Xiotech Corp. v. Express Data Prods. Corp.*, 11 F. Supp. 3d 225, 234 (N.D.N.Y. 2014) (citation omitted). Second, it is not clear that the MSA *itself* is integral to Plaintiff's breach of contract claim, particularly where Plaintiff did not have possession of the agreement when drafting the Complaint. The MSA—to which NYSEG is not a party—sets forth a process by which NYSEG may procure traffic control services from ADA but provides no guarantee that NYSEG will in fact issue any purchase order or request for proposal for such services. *See generally* Dkt. No. 17-3 at 4-5, § 2. The MSA further provides that "each

---

[5] Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

Purchase Order processed in accordance with [the MSA] . . . constitutes a separate and distinct contract for the particular Services set forth in the Purchase Order." *Id.* at 5, § 2.2(c). Each such separate contract "shall be governed by" certain enumerated documents, some of which may be "amended or modified for the particular Purchase Order." *Id.* at 5-6, § 2.2(c). Accordingly, because the terms of the MSA both (1) require NYSEG and ADA to enter into "separate and distinct" contracts for the provision of services and (2) allow for the possibility of modified terms, the Court will not assume that the terms of the MSA apply as written to any or all relevant agreements between NYSEG and ADA.

The Court therefore declines to consider the MSA on Defendants' motions to dismiss.

### 2. Breach of Contract

Section 220 of the NYLL requires that all "laborers, workmen or mechanics" employed on "public works" projects be paid the "prevailing rate of wages." NYLL § 220(3)(a). There "is no private right of action expressly codified within the NYLL" for the alleged failure to pay prevailing wages "until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed." *Walton v. Comfort Sys. USA (Syracuse), Inc.*, 155 F.4th 144, 155 (2d Cir. 2025) (citation omitted). However, "at least in some cases, workers can enforce the prevailing wage requirement through a private breach of contract claim, relying on their status as third-party beneficiaries." *Id.*; *see also Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 613-14 (S.D.N.Y. 2016) ("When the relevant public works contract expressly incorporates the prevailing-wage requirement of New York law, . . . it is clear that workers may *either* pursue an administrative remedy *or* sue for breach of contract as third-party beneficiaries." (internal footnote and citations omitted)); *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, No. 22-cv-8957, 2024 WL 3086161, at *21 (S.D.N.Y. June 7, 2024) ("[W]here a private sector contract calls for the payment of prevailing wages, the third-party beneficiary doctrine provides workers with a remedy

under New York law, even though Section 220 is otherwise inapplicable."), *report and recommendation adopted*, 2024 WL 3105686 (S.D.N.Y. June 24, 2024).

Plaintiff's claim for prevailing wages relies on the latter option, and he alleges three sets of contracts: (1) permits NYSEG obtained from NYSDOT, (2) Design Bid Build agreements, and (3) agreements between NYSEG and ADA. The Court considers each in turn.

### a.    NYSDOT Permits

Defendants both argue that Plaintiff's breach of contract claim for failure to pay prevailing wages fails as a matter of law to the extent it is premised on permits NYSEG obtained from the NYSDOT because such permits are not contracts and therefore provide no third-party contractual rights. Dkt. No. 17-1 at 21-23; Dkt. No. 19-1 at 15. Plaintiff does not dispute the proposition that permits are not contracts but argues that his breach of contract claim can be premised on "municipal contracts utilized to secure DOT permits." Dkt. No. 26 at 35-36.

The Court agrees that the NYSDOT permits which Plaintiff alleges were granted to NYSEG are not contracts which could grant Plaintiff any third-party beneficiary rights. *See, e.g.*, *Gregory v. Stewart's Shops Corp.*, No. 14-cv-33 (TJM), 2017 WL 4326518, at *4 (N.D.N.Y. Sept. 28, 2017) ("The Permits issued by the NYS DOL, clearly within the scope of its regulatory powers . . . do not constitute a contract.") (citations omitted); *Ross v. No Parking Today, Inc.*, 224 A.D.3d 559, 560-61 (1st Dep't 2024) (holding that trial court "properly dismissed the portion of plaintiffs' breach of contract claim based solely on the DOT permit" because the permit was "not a contract giving rise to third-party beneficiary rights"). Thus, Plaintiff's breach of contract claim is dismissed to the extent it relies solely on permits as a source of contractual rights. The Court construes Plaintiff's reference to "municipal contracts," of which there is no mention in the Complaint, as a reference to the alleged Design Bid Build agreements, which the Court considers next.

### b.    Design Bid Build Agreements

Plaintiff alleges, upon information and belief, that NYSEG entered into certain "Design Bid Build" agreements with New York and/or NYSDOT to obtain certain permits and that these Design Bid Build agreements mandate that NYSEG and its subcontractors pay prevailing wages. *See* Dkt. No. 1 ¶¶ 34, 36, 148, 149. Defendants argue that Plaintiff's allegations in this regard are conclusory and speculative and do not plausibly allege a breach of contract claim. Dkt. No. 17-1 at 23-24; Dkt. No. 19-1 at 15-16.[6]

Here, Plaintiff alleges that NYSEG entered into Design Bid Build agreements with New York and/or NYSDOT to obtain permits and that those agreements mandated that NYSEG and its subcontractors pay prevailing wages. Dkt. No. 1 ¶¶ 148-49. The Court concludes that these allegations are sufficient to state a third-party beneficiary breach of contract claim, because Plaintiff has specifically identified the provision of those agreements Defendants allegedly breached. *See, e.g.*, *Johnson*, 160 F. Supp. 3d at 615 (finding that plaintiffs stated third-party beneficiary claim where they alleged "the existence of a contract between defendant-employers and public agencies that 'obligated Defendants to pay Plaintiffs . . . at or above the local prevailing wage rates'").

Although Plaintiff does not allege that ADA is a party to any such agreements that NYSEG entered into with New York and/or NYSDOT, Plaintiff plausibly alleges that these agreements were "public work" contracts subject to NYLL § 220. Courts employ a three-prong test to

---

[6] Defendants also argue that the Design Bid Build program does not apply to utility owners such as NYSEG. The New York Court of Appeals has held that "private utility work does not constitute 'public work'" for purposes of the bidding requirements in New York General Municipal Law § 103. *See Diamond Asphalt Corp. v. Sander*, 92 N.Y.2d 244, 259 (1998). But *Diamond Asphalt Corp.* did not hold that "public work" means the same thing in Labor Law § 220 as it does in General Municipal Law § 103. Nor does Defendants' argument account for the Complaint's allegations that NYSEG *did* in fact enter into Design Bid Build agreements.

determine whether a particular project is a "public work" subject to the prevailing wage requirements of NYLL § 220:

> [1] First, a public agency must be a party to a contract involving the employment of laborers, workers, or mechanics. [2] Second, the contract must concern a project that primarily involves construction-like labor and is paid for by public funds. [3] Third, the primary objective or function of the work product must be the use or other benefit of the general public.

*De La Cruz v. Caddell Dry Dock & Repair Co.*, 21 N.Y.3d 530, 538 (2013).

Here, Plaintiff alleges that New York and/or NYSDOT is a party to the contracts with NYSEG, that NYSEG's work is "paid for by public funding, including, *inter alia*, government subsidies and/or grants," and that the work is for the benefit of the general public. Dkt. No. 1 ¶¶ 148, 156-59. Thus, ADA can be liable for the failure to pay Plaintiff prevailing wages. *See* NYLL § 223 (providing that a contractor "shall be responsible" for a sub-contractor's "non-compliance or evasion" of Section 220); *see also Walton v. Comfort Sys. USA (Syracuse), Inc.*, --- N.E.3d ---, 2026 WL 1790858 (N.Y. June 23, 2026) (holding that "the promise to pay prevailing wages is implicit in every public works contract by operation of Labor Law § 220(3)(a) such that an employee on a public work project is a third-party beneficiary of that contract").

Accordingly, at this stage the Court denies Defendants' motions to dismiss a breach of contract claim premised on alleged Design Bid Build agreements.

### c.    MSA

Defendants also argue that Plaintiff cannot maintain a breach of contract claim based on the MSA. Because the Court declines to consider the MSA, the Court also declines to dismiss a breach of contract claim premised on that agreement.

### 3.      Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Clark v. CooperFriedman Elec. Supply Co.*, No. 23-cv-7806, 2024 WL 3675944, at *7 (S.D.N.Y. Aug. 5, 2024) (citation omitted).

Defendants move to dismiss Plaintiff's unjust enrichment claim on the ground that Plaintiff cannot maintain a claim for equitable relief where he has adequate remedies at law. Dkt. No. 17-1 at 27; Dkt. No. 19-1 at 17-18. Plaintiff responds that he may assert an unjust enrichment claim in the alternative to his breach of contract claim, Dkt. No. 26 at 36-37,[7] but does not directly respond to Defendants' argument. As Defendants point out, a "court will not permit a claim in equity" where "there is an adequate remedy at law." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 364 n.26 (E.D.N.Y. 2015) (citation omitted). Defendants point out that Plaintiff has an adequate remedy at law in the form of filing a complaint with the relevant fiscal officer pursuant to Section 220 to remedy any violation by Defendants, in addition to contractual claims. Given Plaintiff's failure to respond to this argument, the Court grants Defendants' motions to dismiss Plaintiff's unjust enrichment claim. *See Raymond v. Mitchell*, No. 18-cv-1467 (GTS/MJK), 2024 WL 2941847, at *5 (N.D.N.Y. June 11, 2024) ("[W]hen a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument

---

[7] The Court notes that Plaintiff's allegations in support of his unjust enrichment claim are expressly and solely based on Defendants' alleged breaches of various agreements and not on any alternative theory of liability. *See* Dkt. No. 1 ¶¶ 347-57 (alleging that Defendants failed to pay prevailing wages in breach of various agreements); *see also Greene v. Clean Rite Ctrs., LLC*, 714 F. Supp. 3d 134, 151 (E.D.N.Y. 2024) (noting that "even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action").

11

possesses facial merit, which has appropriately been characterized as a 'modest' burden.")
(citations omitted).

### B.    NYSEG as Joint Employer

NYSEG moves to dismiss all of Plaintiff's claims under the FLSA and NYLL against it on
the ground that Plaintiff has not plausibly alleged that NYSEG is his "employer" under those
statutes. Dkt. No. 17-1 at 11-20; *see* 29 U.S.C. § 203(d), (e)(1), (g) (defining employer, employee
and employ); NYLL § 190(2), (3) (defining employee and employer).[8]

"[W]hether an employer-employee relationship exists for purposes of the FLSA" is
grounded in "economic reality rather than technical concepts," and is determined on a "case-by-
case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps.
Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (citations omitted). The Second Circuit has identified
three sets of factors to consider in determining whether an entity is an FLSA employer which are
relevant to (1) the "degree of formal control exercised over a worker," (2) distinguishing between
independent contractors and employees, and (3) determining "whether an entity that lacked formal
control nevertheless exercised functional control over a worker." *Id.* at 143 (citations omitted).[9]
These factors are "nonexclusive and overlapping." *Id.* The "determination of employment status
is a 'fact-intensive' inquiry, making it 'not suitable to resolution on a motion to dismiss.'" *Lambert
v. New Start Cap. LLC*, 799 F. Supp. 3d 258, 289 (S.D.N.Y. 2025) (citations omitted); *see also
Barfield*, 537 F.3d at 143-44 ("Because of the fact-intensive character of a determination of joint

---

[8] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the
definition used by the FLSA." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37
(E.D.N.Y. 2015) (citations omitted); *see also Yu v. Mask Pot, Inc.*, 241 A.D.3d 726, 728 (2d Dep't
2025) (interpreting the definition of employer under the NYLL "coextensively with the definition
used by the FLSA").

[9] The parties make no argument with respect to the distinction between independent contractors
and employees.

employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment.").

To assess the degree of formal control exercised over a worker, courts evaluate "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield*, 537 F.3d at 142 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). To assess whether an alleged employer had functional control over workers, courts consider

> (1) whether [the alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [plaintiffs' employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [the alleged employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [the alleged employer].

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d 2003).

Here, NYSEG argues that Plaintiff has not plausibly alleged that NYSEG was his employer (jointly with ADA) under either the *Carter* factors or the *Zheng* factors.

### 1.    Power to hire and fire

The first *Carter* factor looks at whether the alleged joint employer had the power to hire and fire employees. With respect to hiring, the Complaint alleges that ADA interviews and hires Flaggers, including Plaintiff. Dkt. No. 1 ¶¶ 81-82, 177. Although the Complaint alleges that "Defendants" have the power to hire, *id.* at ¶ 80, there are no factual allegations plausibly

suggesting that NYSEG had any control over or involvement in ADA's hiring process or decisions.[10]

Plaintiff further alleges that "Defendants" have the power to fire and "discipline Flaggers for breaching their internal policies and standards," *id.* at ¶ 80, and that NYSEG can "mandate that specific Flaggers work or not work a shift or at a jobsite based on the supervisor's prior dealing with the Flagger," *id.* at ¶ 86. NYSEG argues that is insufficient and represents "nothing more than limited deauthorization power," and not the power to fire. Dkt. No. 17-1 at 13. NYSEG relies on *Moses v. Consol. Edison Co. of New York Inc.*, No. 18-cv-1200, 2024 WL 1329800, *5 (S.D.N.Y. Mar. 28, 2024), which recognized that the "commonplace deauthorization power present in contracting relationships" is generally not understood to "qualify as the power to fire" in certain circumstances. But *Moses* was decided on summary judgment. At this stage, given Plaintiff's allegations that NYSEG could remove or prevent certain Flaggers from working, the first *Carter* factor weighs slightly in favor of Plaintiff.

### 2.    Control over work schedules and conditions of employment

The second *Carter* factor considers whether the alleged joint employer supervised and controlled employee work schedules or conditions of employment. As most relevant, the Complaint alleges that (1) the "date, time, duration, and location of Flaggers' shifts are determined exclusively by NYSEG," Dkt. No. 1 ¶¶ 40-41; (2) "in the event NYSEG completes work at a jobsite early, an NYSEG supervisor will direct Flaggers to a second job site—and a third or fourth

---

[10] Plaintiff's repeated refrain that ADA did certain things "on behalf of" NYSEG likewise does not plausibly allege NYSEG's *control* or authority over certain matters. Further, given that the Court declines to consider the MSA on NYSEG's motion, the Court disregards Plaintiff's reliance on the MSA to support his joint employer arguments.

jobsite—so they can continue working until their shift is complete," *id.* at ¶ 58; and (3) a NYSEG supervisor's permission is needed for Flaggers to take breaks during their shifts, *id.* at ¶¶ 71-75.

NYSEG argues that the Complaint at most alleges that NYSEG identified when and where its own utility work would occur and that it complied with applicable safety and regulatory obligations. Dkt. No. 17-1 at 13-17. NYSEG relies primarily on *Godlewska v. HDA*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013), *Jean-Louis v. Metro. Cable Commc'ns*, 838 F. Supp. 2d 111, 126 (S.D.N.Y. 2011), and *Lawrence v. Adderley Indus., Inc.*, No. 09-cv-2309, 2011 WL 666304 (E.D.N.Y. Feb. 11, 2011), in support of this argument. However, the Court agrees with Plaintiff that *Godlewska*, *Jean-Louis*, and *Lawrence* are inapposite because those cases were all decided at the summary judgment stage, rather than on a motion to dismiss.

The allegations in this case are more similar to those in *Ortiz v. Consolidated Edison Company of New York, Inc.*, 801 F. Supp. 3d 260 (S.D.N.Y. 2025). There, the plaintiffs alleged many ways in which the defendants directed and supervised their schedule and work including, for example, assigning shifts or directing the subcontractors to assign shifts, notifying employees of jobsite locations, requiring employees to "obtain permission to take breaks or call out sick," and using a smartphone app to track employees' location. *Id.* at 303. Because the plaintiffs alleged that they were "given their day-to-day instructions about assignments" and "worked under the supervision" of the defendants in "several respects," the court concluded that the second *Carter* factor was satisfied and that the "level of control" exercised over the plaintiffs' schedules and conditions of employment was a "factual question that cannot be decided as a matter of law at the pleading stage." *Id.* at 304.

Similarly, here, where Plaintiff alleges that NYSEG determines the time and location of Flaggers' shifts, directs Flaggers to various jobsites, and controls when Flaggers can take breaks,

the Court concludes that at this stage the second *Carter* factor weighs in favor of finding that NYSEG was a joint employer.

### 3.    Rate and method of payment

NYSEG argues that Plaintiff does not plausibly allege that NYSEG determined his rate and method of payment because the Complaint alleges that ADA pays Flaggers and gathers their banking information to pay via direct deposit. Dkt. No. 17-1 at 17-18. NYSEG further argues that "time-tracking" logistics like the alleged smartphone app and "vendor compensation" under a "unit-price arrangement" are insufficient. *Id.* Plaintiff responds that he alleges that NYSEG used the Smartphone App to track and confirm his hours, rectify any discrepancies, and process his payroll, and that Defendants jointly determined hourly rates. Dkt. No. 26 at 24-25; *see* Dkt. No. 1 ¶¶ 89-94, 179, 201, 204.

Plaintiff alleges that Defendants direct Flaggers to input their hours worked into the Smartphone App. Dkt. No. 1 ¶ 90. After Defendants determine the number of hours Flaggers work each week, presumably using the Smartphone App data, NYSEG "pays ADA an hourly rate for these hours, pursuant to unit prices set in agreements between ADA and NYSEG." *Id.* at ¶ 91. These allegations are similar to those found sufficient in *Ortiz*. 801 F. Supp. 3d at 305 (finding the third *Carter* factor satisfied where plaintiff alleged that the defendants "establish[ed] hourly rates" and "work[ed] together to confirm the number of hours Employees worked during a given pay period in order to process Employees' payroll and rectify any discrepancies"); *see also Barfield*, 537 F.3d at 144-45 ("The fact that Bellevue calculated the hours [the plaintiff] worked and that it then paid the agencies an hourly rate for those hours, so that the agencies, in turn, paid [the

plaintiff] an hourly rate for the exact same hours, indicates that Bellevue exerted some control over [the plaintiff's] pay.").[11]

Accordingly, at this stage, Plaintiff has plausibly alleged the third *Carter* factor.

### 4.    Employment records

The fourth and final *Carter* factor considers whether the alleged joint employer maintained employment records. Although the Complaint contains a conclusory allegation that "ADA and NYSEG maintain all employment, personnel, and business records for Flaggers," the only specific allegation tying NYSEG to the maintenance of any records is the allegation that Defendants "maintain the Smartphone App which is where they direct their Flaggers to upload the hours they worked." Dkt. No. 1 ¶¶ 95, 98.

NYSEG argues that the Smartphone App data is "client-facing data" and not employee recordkeeping. Dkt. No. 17-1 at 18-19. However, as discussed above, the Complaint alleges that NYSEG used this data to confirm the number of hours Flaggers worked and rectify any discrepancies before paying ADA for the services. Thus, while the Complaint's allegations are sparser than those in *Ortiz*, because the data at issue relates to the number of hours worked by Flaggers, a matter of great relevance to Plaintiff's claims, the Court concludes that Plaintiff has plausibly alleged the fourth *Carter* factor.

In sum, recognizing that the question of whether an entity is a joint employer is fact-intensive and often not suitable to resolution on a motion to dismiss, the Court concludes that Plaintiff has plausibly alleged that NYSEG was his joint employer under the *Carter* factors. In light of this conclusion, it is not necessary to analyze whether Plaintiff has plausibly alleged that

---

[11] NYSEG relies on *Jean-Louis* which, in addition to being decided at summary judgment, is distinguishable because there the putative joint employer "never calculate[d] Metro technicians' hours or compensate[d] Metro based on those calculations." 838 F. Supp. 2d at 129.

NYSEG was his joint employer under the *Zheng* factors of functional control. *See Gayle v. Harry's Nurses Registry, Inc.*, No. 07-cv-4672, 2009 WL 605790, at *6 n.4 (E.D.N.Y. Mar. 9, 2009) ("Because I conclude that defendants exercised formal control over plaintiff, it is not necessary to analyze her work situation under the functional control test.").

NYSEG's motion to dismiss Plaintiff's FLSA and NYLL claims is therefore denied.

### C.    NYLL § 195 Claims

Finally, ADA moves to dismiss Plaintiff's sixth cause of action for failure to provide a notice of pay rate and seventh cause of action for failure to provide accurate wage statements under NYLL § 195. Dkt. No. 19-1 at 8-10. ADA argues that Plaintiff has "failed to allege any specific injury" resulting from ADA's alleged failures and therefore lacks standing,[12] and that ADA provided wage statements in compliance with New York law. *Id.*

The NYLL provides that every employer shall provide its employees, at the time of hiring, a notice containing certain information, including "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other," the "regular pay day," and information about the employer. NYLL § 195(1)(a). Employers are also required to provide their employees "a statement with every payment of wages" which lists certain information, including the "dates of work covered by that payment of wages," the "rate or rates of pay and basis thereof," and the number of regular and overtime hours worked. *Id.* § 195(3).

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*

---

[12] The portion of ADA's motion to dismiss for lack of standing is properly considered under Federal Rule of Civil Procedure 12(b)(1).

*v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To show standing to bring a claim for violation of NYLL § 195, a plaintiff "cannot rely on 'technical violations' of [the statute] but must allege 'actual injuries suffered as a result of the alleged wage notice and wage statement violations." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2d Cir. 2024) (ellipsis and citation omitted); *see also Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself.") (citing *TransUnion*, 594 U.S. at 424-30). A plaintiff bringing claims for violation of NYLL § 195 therefore "must show some causal connection between the lack of accurate notices and the downstream harm." *Guthrie*, 113 F.4th at 308. "[U]nless the plaintiff-employee can show that he or she would have undertaken [self-]advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195." *Id.* at 308-09 (noting that a plaintiff-employee "cannot assume this conclusion without analysis or rely on speculation or conjecture") (brackets and internal quotation marks omitted).

Here, Plaintiff alleges that ADA's failure to provide him with a notice of pay rate and accurate wage statements "prevented" him from "(i) realizing his true hours worked; (ii) realizing that Defendants underpaid him; and (iii) taking appropriate action to obtain the payments due to him." Dkt. No. 1 ¶ 222; *see id.* at ¶¶ 307-08 (alleging that the failure to provide the required notices and statements prevented Plaintiff from "advocating for [himself] by taking appropriate action to obtain the payments due," "hindered Plaintiff . . . from realizing [his] rights at the time of payment," and "enabl[ed] the underpayment of . . . wages, necessitating this action"). Drawing all

19

reasonable inferences from these allegations in Plaintiff's favor, Plaintiff has plausibly alleged a causal connection between ADA's alleged violation of NYLL § 195 and some downstream harm sufficient to satisfy the Article III standing requirement at this stage. "Indeed, in the wake of *Guthrie*, 'courts in this Circuit are in agreement that a plaintiff has standing if he or she plausibly alleges that, by failing to provide the required wage statements, the employer was able to hide its violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of his unpaid wages.'" *Velasquez v. Universal Prot. Serv., LLC*, No. 24-cv-4795, 2025 WL 2105894, at *4 (S.D.N.Y. July 28, 2025) (citation omitted) (collecting cases). In *Velasquez*, for example, the court found allegations that the employer's violations of Section 195 deprived employees of the ability to contest the employer's calculations, allowed the employer to hide its wrong-doing, and caused "delayed payment of all proper wages owed" and financial hardship went "beyond asserting a mere technical violation of the NYLL and [did] not rely on speculation and conjecture." *Id.*

Similarly here, even though Plaintiff's allegations are "sparse," they are sufficient to plausibly allege an injury in fact "in this early procedural posture." *Id.*; *see also, e.g.*, *Johnson v. Best Bev LLC*, No. 24-cv-1260 (AJB/ML), 2025 WL 2734204, at *5-6 (N.D.N.Y. Sept. 25, 2025) (holding that allegation that failure to provide proper wage statement "deprived [plaintiff] of the ability to know exactly how much compensation he was entitled to and contributed to the underpayment of wages" sufficient to plausibly allege concrete injury); *Mendez v. Prime Mgmt. Consultants LLC*, No. 24-cv-1301 (AMN/PJE), 2026 WL 865758, at *9 (N.D.N.Y. Mar. 30, 2026) (finding allegation that violation of Section 195 "hindered [the plaintiffs'] ability to confront Defendants sooner about their owed wages" and "prevented Plaintiffs from 'discover[ing] the violation of their rights sooner and avoiding some of the harm they experienced" sufficient under

*Guthrie*); *accord Romero v. Garner Env't Servs., Inc.*, No. 25-cv-6912, 2025 WL 3638397, at *7 (S.D.N.Y. Dec. 15, 2025).[13] The Court therefore denies ADA's motion to dismiss Plaintiff's Section 195 claims for lack of standing.

ADA also moves to dismiss Plaintiff's claim for failure to provide wage statements in accordance with NYLL § 195(3) (count seven) on the ground that the wage statements provided to Plaintiff contained the information required by the statute. Dkt. No. 19-1 at 9-10; *see* Dkt. No. 19-2 (attaching Plaintiff's wage statements). Plaintiff responds that Section 195(3) requires employers to provide *accurate* wage statements and that he has alleged ADA's failure to do so. Dkt. No. 26 at 38-39.

Relying both on the plain text of Section 195(3) and its legislative objective, courts in this Circuit have concluded that the statute requires that the information employers must provide be accurate. *See, e.g.*, *Santiago v. Home Infusion Grp., Inc.*, No. 20-cv-5455, 2022 WL 5175117, at *5 (E.D.N.Y. June 7, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 17798164 (E.D.N.Y. Dec. 19, 2022); NYLL § 195(3) (requiring that wage statements to include the "number of regular hours *worked*" and the "number of overtime hours *worked*" (emphases added)). Because ADA cites no authority to the contrary, and because Plaintiff alleges that ADA did not account for all hours he worked, Plaintiff has stated a claim for failure to provide accurate wage statements under Section 195(3). *See, e.g.*, *Conte v. Tri-State Techs., Inc.*, 238 A.D.3d 704, 706 (2d Dep't 2025) (holding that the plaintiffs stated a cognizable claim under NYLL § 195(3)

---

[13] "Because the elements of Article III standing are . . . an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Guthrie*, 113 F.4th at 308-09 (citation and internal quotation marks omitted). For this reason, the cases ADA cites which evaluated standing at the summary judgment stage are inapposite. *See* Dkt. No. 28 at 5-6; *see also Ortiz*, 801 F. Supp. 3d at 329 (noting that a plaintiff must proffer "specific facts" to establish standing at summary judgment).

"by alleging that their wage statements inaccurately reflected the hours that they worked") (citation omitted).

Accordingly, ADA's motion to dismiss Plaintiff's sixth and seventh causes of action for violation of NYLL § 195 is denied.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant NYSEG's motion to dismiss, Dkt. No. 17, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendant ADA's partial motion to dismiss, Dkt. No. 19, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiff's claim for breach of contract (tenth cause of action) is **DISMISSED** against both Defendants to the extent it is premised on permits issued to NYSEG as a source of contractual rights; and it is further

**ORDERED** that Plaintiff's claim for unjust enrichment (eleventh cause of action) is **DISMISSED** against both Defendants; and it is further

**ORDERED** that Defendants' motions are otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: June 29, 2026

_____
Elizabeth C. Coombe
U.S. District Judge

22